UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRITTNEY L. PARRISH, <br><br> Plaintiff, <br><br> v. <br><br> KILILO KIJAKAZI, <br> Acting Commissioner of the Social Security Administration, <br><br> Defendant. | CAUSE NO. 1:20-CV-258 DRL |

## OPINION AND ORDER

Brittney Parrish appeals the Social Security Commissioner's denial of her application seeking a period of disability and disability insurance benefits. Ms. Parrish requests reversal of the Commissioner's determination and remand for further consideration. The court grants remand.

## BACKGROUND

Ms. Parrish filed a Title II application for benefits on April 17, 2018, alleging disability beginning March 31, 2015. She remained insured in accordance with the insured status requirements of the Social Security Act through March 31, 2015. Her application was initially denied and again on reconsideration. Her claims were heard by an Administrative Law Judge (ALJ) in a hearing on July 30, 2019. In an October 1, 2019 decision, the ALJ denied her petition. This decision became final when the Appeals Council denied her request for review [R. 1].

Ms. Parrish suffers from a variety of physical and mental health impairments. Her impairments include a history of previous heart attack and stroke due to antiphospholipid syndrome—a condition when one's immune system mistakenly creates antibodies that make the blood more likely to clot—requiring anticoagulants [R. 20]. She also has hypertension with coronary artery disease, fatigue with iron deficiency anemia, post-traumatic stress disorder (PTSD), and anxiety [*id.*].

The ALJ found that, through the date last insured, Ms. Parrish had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: she needed a sit/stand option, with the ability to alternate between sitting and standing every 30 minutes, and needed to avoid concentrated exposure to hazards, such as dangerous machinery and slippery surfaces [R. 22]. She could occasionally climb ramps and stairs, but could never climb ladders, ropes, or scaffolds, and could occasionally balance, stoop, kneel, crouch, and crawl [*id.*]. She was limited to understanding, carrying out, and remembering simple instructions consistent with unskilled work and could perform such work throughout an eight-hour workday without frequent redirection to task. She could use work-related judgment but was limited to making only simple decisions. [*id.*]. She could not perform tasks requiring focused attention for more than two hours and could not perform work which requires satisfaction of rigid production quotas [*id.*]. She could have only occasional interactions with the public [*id.*]. The ALJ found that Ms. Parrish had no past relevant work but could make a successful adjustment to other work existing in significant numbers in the national economy [R. 26].

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g), though review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v.*

2

*Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Parrish challenges the ALJ's disability determination. She advances four arguments: the ALJ (1) erred in his consideration of medical opinion evidence and impermissibly excluded evidence; (2) used the wrong standard to evaluate subjective symptoms; (3) improperly evaluated evidence from non-medical sources; and (4) erred in his vocational findings. The ALJ's limitation on the evidence requires remand.

A. *The ALJ Impermissibly Limited the Evidence He Reviewed.*

Most of Ms. Parrish's discord with the ALJ's decision bears on what the ALJ didn't review. To be entitled to disability insurance benefits, Ms. Parrish must show she was disabled on or before the date she was last insured, March 31, 2015. *See* 20 C.F.R. §§ 404.101(a), 404.131(a). To provide a

3

"snapshot" of Ms. Parrish's health, the ALJ only reviewed evidence from November 2014 through December 2015—a few months before and few months after her date last insured [R. 23].

Such arbitrary line-drawing of reviewable evidence isn't appropriate. Medical evidence post-dating the disability period is "relevant to the extent it may reflect the claimant's impairments on a prior date." *Jones v. Saul*, 823 Fed. Appx. 434, 439 (7th Cir. 2020) (citing *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013) (ALJ permissibly relied on evidence post-dating the date last insured when results were consistent with previous eye examinations showing long-term eye impairments) and *Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006) (retrospective diagnosis of PTSD supported finding of past impairment)). Evidence before the date last insured or shortly thereafter must not be viewed in isolation. *Halvorsen v. Heckler*, 743 F.2d 1221, 1125-26 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period.").

Ms. Parrish says the ALJ erred by not reviewing opinion evidence, treatment notes, and a July 2019 letter of her treating psychologist, Dr. Jenny Seiss, when analyzing the psychologist's persuasiveness and Ms. Parrish's subjective symptoms.[1] She says neurological evidence from Dr. Ajay Gupta in 2017 also should have been reviewed. Ms. Parrish contends that evidence from both Dr. Gupta and Dr. Seiss demonstrated chronic conditions pre-dating Ms. Parrish's date last insured. She also argues that the ALJ erred by not reviewing or mentioning her gynecological disorders and invasive surgeries from June 2017 through May 2018.

Though the ALJ must determine whether Ms. Parrish was disabled on or before the date last insured, subsequent records must at a minimum be reviewed to determine if they reflect impairments prior to that date. The ALJ ultimately makes the determination of what weight to give to this evidence,

---

[1] Confusion surrounds the submission of the July 2019 letter into the record. Ultimately, the ALJ found the requirements of 20 C.F.R. § 404.935(b) were satisfied and admitted the evidence [R. 17]. Though the letter wasn't included in the list of exhibits at the end of the decision [R. 31], it was included in the record [R. 69].

so long as supported by substantial evidence and a logical explanation. The ALJ may not flat out refuse to consider post-dated evidence but must review and then assess whether the evidence supports a claim or not. *See Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008). Such blanket exclusion of evidence after Ms. Parrish's date last insured was an error. The error seems evident enough that the Commissioner didn't respond with a defense.

The court need not determine the relevancy of such evidence to impairments on or before her date last insured as it isn't the court's role to decide facts anew, reweigh evidence, or substitute its own judgment for that of the Commissioner's. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). On remand, the ALJ must review the whole record and then conclude what supports Ms. Parrish's claim of disability on or before her date last insured.

Ms. Parrish also argues that the ALJ "played doctor" by independently evaluating evidence never reviewed by the state agency consultants—specifically medical opinion by Dr. Seiss from April 2014-October 2016 and June 2018-May 2019—and formulating his own opinions on this evidence. The ALJ found the assessments from the state agency medical consultants not to be persuasive because they didn't review all the medical evidence submitted to the ALJ.

An ALJ may not "play doctor and interpret new and potentially decisive medical evidence without medical scrutiny." *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018) (internal quotations omitted). Not all new evidence warrants remand. *Kemplen v. Saul*, 844 Fed. Appx. 883, 887 (7th Cir. 2021); *Keys v. Berryhill*, 679 F. Appx. 477, 481 (7th Cir. 2017) (citing *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("If an ALJ were required to update the record anytime a claimant continued to receive treatment, a case might never end.")). Here, the determinative question is whether the new evidence "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a nonexamining physician and by evaluating himself the significance of [the] report, or

5

whether the updated information was minor enough that the ALJ did not need to seek a second opinion." *Kemplen*, 844 Fed. Appx. at 887 (internal quotations and citations omitted).

Of Dr. Seiss' medical opinion not reviewed by the state agency consultants—ranging from April 2014-October 2016 and June 2018-May 2019—only a small portion was reviewed by the ALJ due to his specified timeframe (November 2014-December 2015). On remand, the ALJ must assess if the evidence not reviewed by the state agency consultants "changes the picture" to the extent that the state agency medical opinions are outdated or if the evidence is "minor enough" that the ALJ needn't seek a second opinion. *See id.*

Ms. Parrish also says her case is like *Collins v. Berryhill*, 2018 U.S. Dist. LEXIS 71223, 24 (N.D. Ind. Apr. 27, 2018). There the court found the ALJ relied on his own assessment of the applicant's medical conditions instead of obtaining a medical opinion. However, in *Collins*, the ALJ rejected the medical opinion of the only physician who provided an opinion on the claimant's impairments. *Id.* Here, the ALJ didn't reject, but relied on, Dr. Seiss' opinion—only looked at evidence within the ALJ's specified timeframe—and therefore didn't disregard the only medical opinion given on Ms. Parrish's mental health impairments [R. 24].

This issue thus relates back to whether evidence outside of the ALJ's timeframe should have been considered. A different conclusion may result if post-dated evidence from Dr. Seiss is considered relevant but rejected without support by a medical expert. *See Silbert v. Saul*, 2021 U.S. Dist. LEXIS 61751, 11-12 (N.D. Ill. Mar. 31, 2021). Although it is the ALJ's duty to formulate the RFC, *see Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007), an ALJ cannot reject all the relevant medical opinions and then construct his own assessment without logically connecting the evidence to the RFC findings. *Mark J. v. Saul*, 2020 U.S. Dist. LEXIS 11096, 13-14 (N.D. Ill. Jan. 23, 2020). This may be addressed on remand upon consideration of the evidence as a whole.

B. *The ALJ Applied the Correct Standard for Subjective Symptoms.*

Ms. Parrish argues that the ALJ used the incorrect standard when evaluating the credibility of her subjective symptoms. The ALJ said Ms. Parrish's statements were "not entirely consistent" with other evidence in the record [R. 23], and such a standard would be error. The correct standard to apply is whether a claimant's allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a); *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871 (N.D. Ill. 2018). Some courts have found the ALJ's boilerplate problematic, *see id.*; *Bancolita v. Berryhill*, 312 F.Supp.3d 737, 744 (N.D. Ill. 2018), though others have decided that the inclusion of such language alone doesn't necessitate remand, *see Giboyeaux v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 14868, 11 (N.D. Ind. Jan. 9, 2020) (Collins, J.) (collecting cases); *see also Oliver v. Saul*, 2020 U.S. Dist. LEXIS 55894, 11 (N.D. Ind. Mar. 31, 2020) (Kolar, J.) ("This language is not necessarily fatal so long as the ALJ fully explains his decision and a 'commonsensical reading' of the entire decision suggests no error."). The court falls within the latter camp and finds that the ALJ applied the correct standard, though this appeal once more counsels ALJs in favor of articulating the proper standard.

In her function report, Ms. Parrish stated that she cooked light meals once or twice a week, performed light cleaning and laundry once or twice a week, occasionally shopped for an hour or so, enjoyed reading often, could count change, and she ate and conversed with friends and family once or twice a week [R. 279-285]. In determining that Ms. Parrish's mental impairments did not meet or medically equal an impairment, the ALJ relied on Ms. Parrish's function report, in conjunction with her hearing testimony [R. 21-22]. The ALJ cited Ms. Parrish's ability to answer questions and explain her past work and medical history, as well as her ability to read, shop, and count change, as evidence of no more than a mild limitation in remembering or applying information [*id.*].

The ALJ noted Ms. Parrish had a moderate limitation in interacting with others, as she reported having no problems getting along with family, friends, or neighbors, and she continued to

7

engage in social activities with those people [R. 21]. The ALJ noted Ms. Parrish had a moderate limitation with concentrating, persisting, or maintaining pace; while she testified to having issues with attention and concentration, she did report engaging in activities which required some sustained focus [*id.*]. In determining that Ms. Parrish had a mild limitation in self-management, the ALJ cited her testimony that she did need help with some activities of daily living [*id.*]. However, her function report indicated that, notwithstanding some modifications, she was able to dress, bathe, and feed herself [*id.*].

The ALJ evaluated Ms. Parrish's hearing testimony and function report in his reasoning and, despite using the boilerplate "not entirely consistent" language, he provided an adequate explanation for his decision consistent with the correct standard. Given Ms. Parrish's activities, which she testified to and which the ALJ cited as a basis for his decision, his conclusion was not patently wrong. *See Schideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Further, the ALJ didn't equate Ms. Parrish's activities to her ability to work full-time or limit his consideration to an evaluation of her credibility. *See Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Her arguments about evidence produced by Dr. Seiss and Dr. Gupta and their relation to Ms. Parrish's subjective symptoms have already been addressed.

    C.  *The ALJ Properly Discussed Non-Medical Evidence.*

Ms. Parrish argues that the ALJ erred by impermissibly rejecting Spencer Parrish's (Ms. Parrish's husband) testimony and by not mentioning Valerie Pineiro's (Ms. Parrish's mother) function report. The ALJ needn't evaluate in writing every piece of testimony and evidence submitted, *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (*per curiam*), and isn't obligated to articulate his consideration of non-medical sources such as Mr. Parrish and Ms. Pineiro, *see* 20 C.F.R. § 404.1520c(d). Furthermore, the testimony and function report reiterate and corroborate Ms. Parrish's own testimony and doesn't constitute a separate line of evidence that the ALJ should discuss. *See Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996). No error occurred here.

D.  *Vocational Expert Testimony*

Last, because the court remands for other reasons that could affect the RFC determination, it need not resolve the issue about the vocational expert's testimony. If the evidence on the record supports a more limiting view or expansive view of the work Ms. Parrish can engage in, the vocational expert's testimony may well be altered as to the job number estimate, thereby affecting the ALJ's step five determination.

## CONCLUSION

The court finds that the ALJ erred by limiting his review of evidence to a certain timeframe without consideration of its relevancy to whether Ms. Parrish was disabled on or before her date last insured. Accordingly, the court REMANDS the case to the ALJ for a rehearing consistent with this opinion.

SO ORDERED.

December 9, 2021                                  *s/ Damon R. Leichty*
                                                  Judge, United States District Court